## WEBB v. THE PORTO RICO AMERICAN TOBACCO CO.

## Appeal from the District Court of San Juan.

### No. 489.—Decided May 25, 1910.

ADMISSION OF EVIDENCE—FEES FOR MEDICAL ATTENDANCE—IMMATERIAL ER-
RORS.—The party plaintiff objected to one of his witnesses being cross-
questioned by counsel for the defendant as to whether, during the con-
versations between Doctors Quevedo Báez and Webb, at which said witness
was present as interpreter, he had heard the former say that he was not
authorized by the company to employ the latter in the case of Fontánez,
as said conversation took place after the operation had been made. *Held:*
That Dr. Hildreth, a witness for the plaintiff, having testified to the effect
that, according to a statement of Quevedo Báez, the defendant company did
not know that Dr. Webb had performed the surgical operation on Fontánez
and he desired to inform said company of the fact upon sending it Webb's
bill, it was logical to deduce that Quevedo Báez was not authorized by said
company to engage Dr. Webb, and, therefore, the question put upon cross-
examination to said witness by the defendant company was useless and, as
such could not prejudice the rights of the plaintiff, for which reason the
objection taken thereto was frivolous.

ID.—PRODUCTION OF A LETTER IN EVIDENCE.—The lower court committed an error
in admitting in evidence the letter from Dr. Quevedo Báez to Herminio
Díaz Navarro, because that letter, which is an explanation of what occurred
between Quevedo Báez and Dr. Webb with relation to the surgical attend-
ance upon Fontánez, is equivalent to a deposition by Quevedo Báez, and
the latter could not testify in this case except under oath and affording an
opportunity to the adverse party to be present and cross-examine him.    But
this error did not prejudice the material rights of the plaintiff.

ID.—HEARSAY EVIDENCE.—The lower court erred in admitting the testimony of
Arturo H. Noble, whereby it was sought to supply the absence of witness,
Quevedo Báez, who was the one called upon to testify as to his reasons for
engaging the services of the plaintiff, as said testimony on this particular
was inadmissible, it being hearsay evidence and, consequently, its admis-
sion was a violation of section 19 of the act regulating the introduction of
evidence.    But neither was this error of a material character.

ID.—IMMATERIAL ERRORS—REVERSAL OF JUDGMENT.—When the errors committed
by the trial court are not material, they do not constitute a ground justify-
ing the reversal of the judgment, as provided by section 142 of the Code
of Civil Procedure.

ID.—CASES TRIED BY THE COURTS—ADMISSION OF IMPERTINENT TESTIMONY.—
In cases tried by the court, the exclusion of evidence may often be an error;
but it seldom happens that the admission of impertinent evidence constitutes
a prejudicial error, because the court has, up to the last moment, the power
to disregard impertinent testimony and to render judgment only on the
strength of the material facts that have been proven.    This course is gen-

erally followed by judges as the most expedient in trials without jury; and nothing to the contrary appearing on the record, the presumption should prevail that this course has been followed, and that, therefore, no error has been committed which renders necessary the reversal of the judgment.

CONTRACT OF HIRE OF SERVICES—AGENCY.—The contract whereby a company entrusts a physician with the attendance on an injured employe for its account, is a contract of hire of services, and not one of agency.

REQUISITES OF A CONTRACT OF AGENCY.—From sections 1611 and 1619 of the Civil Code, it is to be deduced that representation constitutes the essential basis of the contract of agency, its result being to convert actual absence into juridical presence; and the essence of said contract consists in acting for account of another, or performing legal acts in the name of another whose personality the agent assumes.

ESSENCE OF THE CONTRACT OF HIRE OF SERVICES.—The essential elements mentioned in the foregoing paragraph do not meet in the contract of hire of services whereby, according to section 1447 of the Civil Code, one of the parties binds himself to render a service to another for a specified price, whether express or implied.

PHYSICIANS—PRACTICE OF THEIR PROFESSION.—A physician, in rendering the services of his profession, acts in his own name, without representing anyone else, and he does nothing but hire his services.

PHYSICIANS—HIRE OF THEIR PROFESSIONAL SERVICES—AUTHORITY TO CALL ANOTHER PHYSICIAN.—A physician who has been entrusted by a company with the attendance and cure of an injured person, without being expressly authorized to engage the surgical services of another physician, has no power to do so in an implied, inductive or indirect manner, because it can never be understood that the mere fact of entrusting to a physician the care of a patient includes the power to call another physician to assist him.

The facts are stated in the opinion.

Messrs. R. H. Todd and N. B. K. Pettingill for appellant.

Mr. Herminio Díaz Navarro for respondent.

. MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On June 9 of last year Ulises R. Webb brought an action in the Second Section of the District Court of San Juan against the Porto Rico American Tobacco Co., to recover $500, with the costs, expenses of the trial, and attorney's fees.

. The plaintiff alleges as the fundamental facts of his action that, on February 16 of said year, he was called upon as a physician and surgeon by his professional colleague, Dr. Manuel Quevedo Báez, to perform a surgical operation on the person of Francisco Fontánez, an employe of the Porto Rico American Tobacco Co., by whose orders Quevedo Báez was attend-

ing Fontánez; that by virtue of the request of Quevedo Báez, who claimed to represent the defendant company, the plaintiff performed the surgical operation required, after which he attended the patient until he had fully recovered; and that, at the suggestion of the said Quevedo Báez, he sent his bill to the defendant company for the sum of $500, the amount of his professional fees, said company having refused to acknowledge and pay said bill.

The defendant company, in making answer to the complaint, admits that the plaintiff performed an operation on Francisco Fontánez, but it denies that he performed it at the request of Dr. Quevedo Báez and that the latter represented the defendant, notwithstanding the fact that he attended the said Fontánez; and it further alleges that, according to a letter dated June 10, 1909, from Quevedo Báez to the attorney for the defendant company, Herminio Díaz Navarro, which letter is embodied in the answer, Quevedo Báez took Fontánez to the Presbyterian Hospital, for the purpose of performing the necessary operations, with the assistance of Dr. Carbonell and the medical director, Dr. Hildreth, for whom he asked, and he not being there, his substitute, Dr. Webb, appeared and took personal charge of the operation, not giving an opportunity to Quevedo Báez or to Carbonell to take part therein except as mere assistants, and that Quevedo Báez, neither in his own name nor in that of the company, had called for the surgical services of the plaintiff.

August 25 having been set for the trial, the court, by judgment of the 14th of the following September, dismissed the complaint, with the costs against the plaintiff, who took an appeal therefrom to this Supreme Court.

The appellant alleges as grounds for his appeal the following reasons:

1. That the court committed an error in permitting the attorney for the defendant to ask witness, Hildreth, if, during the conversation between Doctors Quevedo Báez and Webb, to which he was a witness as interpreter, he heard the former

state that he was not authorized by the defendant company to employ the latter in the case of Fontánez, as said conversation took place after the operation had been performed.

2. That the court also erred in admitting as evidence in favor of the defendant company the letter written by Quevedo Báez to Herminio Díaz Navarro on June 10, 1909, because said letter contained the statement of a person who had not been a witness at the trial, thus affording the plaintiff no opportunity to cross-examine him.

3. That the trial court likewise erred in permitting the witness, Arturo H. Noble, to repeat the conversation had between him and Quevedo Báez, as to that portion relating to the reasons the latter had for securing the services of the plaintiff, because such statement was not acceptable as it was hearsay and not direct evidence.

4. That the court erred in considering as an important fact on which to base a decision in favor of the defendant company, the denial of authority to Quevedo Báez on the part of the company to engage the plaintiff, which denial was made known by Quevedo Báez after the plaintiff had rendered his surgical services.

5. That the court erred in holding that there was no evidence to show that Quevedo Báez had authority to engage the services of the plaintiff, and that, on the contrary, it had been shown that he did not have such authority.

6. That the court also erred in its decision, upon weighing the evidence as a whole, that the judgment should be in favor of the defendant company, and in not holding that the plaintiff was entitled to a verdict in his favor.

Let us see what was the evidence heard at the trial.

The plaintiff states that on or about February 16, 1909, he was called in consultation by Dr. Quevedo Báez on the case of a patient called Francisco Fontánez, who had been taken on the afternoon of that day to the Presbyterian Hospital, and after having consulted with Doctors Quevedo Báez and Carbonell, all three agreed that an operation should be performed

the following day, of which operation, one of external ure-
throtomy for comp'ete rupture, the plaintiff took charge at
the request of Dr. Quevedo Báez, performing it the following
ing day with the assistance of Doctors Carbonell and Hunt-
ington and continuing to attend the patient until April 28 of
the same year, when he was discharged; that although he
had agreed with Quevedo Báez that he would send him his
bill so that he might collect it with his own, the former re-
turned it to him with the statement that the company did not
recognize it, for which reason he appealed to the company
direct, the company refusing to make payment; and that, when
Quevedo Báez asked him to go and see the patient, he did not
tell him that he did so in the name of the defendant company
or of any employe of said company.

Dr. Hildreth testifies that Francisco Fontánez was oper-
ated on by Dr. Webb in the Presbyterian Hospital and that
Quevedo Báez afterwards asked Webb to prepare his bill so
as to send it to the company together with his own, because,
as Quevedo Báez stated, the company was not aware that Dr.
Webb had performed the operation and he wanted to inform
it of the fact at the time of sending his bill, the witness add-
ing that on two occasions Dr. Quevedo Báez had told Dr.
Webb that the company would pay his bill, but he did not
make any direct promise; and upon cross-examination by the
defendant as to whether, during the conversations between
Doctors Quevedo Báez and Webb, at which he was present,
he had heard the former say that he did not have authority
from the company to employ Dr. Webb as a physician in the
case, the witness replied in the affirmative that he had told
him that he did not have such authority.

An exception was duly taken to this question.

Witness Jane E. Dunaway testified that Dr. Webb had
examined the patient, Fontánez, by request of Dr. Quevedo
Báez, and in view of this examination the operation was de-
cided on, Webb asking Quevedo Báez whether he wanted him
to perform the operation, to which Quevedo Báez replied in

the affirmative, also telling Dr. Webb on the following day, when the time to operate had arrived, to continue and finish the operation, which was performed by Webb, the latter attending the patient in every way until he recovered.

This was the evidence for the plaintiff.

The evidence for the defendant consisted of a letter from Dr. Quevedo Báez to Attorney Herminio Díaz Navarro dated June 10, 1909; the bill for fees submitted by Quevedo Báez to the defendant for attending Francisco Fontánez amounting to $400; and the testimony of Luis Toro and Arturo H. Noble.

Luis Toro, the president of the Porto Rico American Tobacco Co., states that, in February of last year, Francisco Fontánez had an accident in the tobacco factory and that Dr. Quevedo Báez had been requested to attend him and that he was authorized to perform the necessary operation, without stating in what hospital, the company paying the expenses because the man was poor; that six weeks later Dr. Quevedo Báez submitted his bill amounting to $400, another from Dr. Carbonell for $100, and another from Dr. Webb for $500; that of these bills the bill of Dr. Quevedo Báez was paid, but not those of Doctors Carbonell and Webb, because these gentlemen had not been authorized to attend the patient, nor had Quevedo Báez asked authority therefor, which fact he had mentioned to the latter, adding that he (Quevedo Báez) should settle matters with the other physicians as the company had not authorized him to call them in, and if he had asked for assistance Dr. Vélez López or Dr. Lippitt would have been sent him, they being the physicians of the company.

Witness, Arturo H. Noble, secretary and treasurer of the company, states that when, on the occasion of the injury suffered by Francisco Fontánez, a laborer in the factory, Dr. Quevedo Báez presented his bill together with one from Dr. Carbonell and another from Dr. Webb, the president of the company ordered him to see Quevedo Báez and asked him who had authorized him to call in the other two physicians, to

which Quevedo Báez replied that, as the patient was in the Presbyterian Hospital, he had been compelled to use the services of Dr. Webb, as required by the hospital regulations, and that he was surprised at Dr. Webb's bill because he understood that the latter was substituting the hospital physician, and, therefore, he did not believe that he was going to charge anything for his intervention by reason of his office.

The plaintiff objected to the admission of the letter from Dr. Quevedo Báez to Herminio Díaz Navarro because it was not sworn to, and he took exception to the decision of the judge admitting it. He also objected to witness Arturo H. Noble's relating the answer of Dr. Quevedo Báez at the interview they had had, and likewise noted an exception to the ruling of the judge admitting the testimony of Noble.

Let us now consider the first three errors which it is alleged the court below committed with relation to the admission of the evidence.

It appears to us that Dr. Hildreth, a witness for the plaintiff, having testified to the effect that, according to a statement of Quevedo Báez, the defendant company did not know that Dr. Webb had performed the surgical operation on Fontánez and he desired to inform said company of the fact upon sending it Webb's bill, it was logical to deduce that Quevedo Báez was not authorized by said company to engage Dr. Webb, and, therefore, the question put upon cross-examination to said witness by the defendant company, as to whether he had heard Quevedo Báez state that he did not have authority to employ Dr. Webb, was superfluous. The question was useless and could not prejudice the rights of the plaintiff, the objection, therefore, being frivolous.

There is no doubt of the fact that the lower court committed an error in admitting in evidence the letter from Dr. Quevedo Báez to Herminio Díaz Navarro, because that letter, which is an explanation of what occurred between Quevedo Báez and Dr. Webb with relation to the surgical attendance upon Fontánez, is equivalent to a deposition by Quevedo

Báez, and the latter could not testify in this case except under oath and after affording an opportunity to the adverse party to be present and cross-examine Quevedo Báez.

With regard to the third error, we believe that it also existed, because it was sought with the testimony of Arturo H. Noble to supply the absence of witness, Quevedo Báez, who was the one called upon to testify as to his reasons for engaging the services of the plaintiff, and, therefore, the testimony of Noble, on this particular, was inadmissible, it being hearsay evidence, and, consequently, in violation of section 19 of the act regulating the introduction of evidence, which provides that a witness can testify to those facts only which he personally and directly knows of his own knowledge. The purpose of the testimony of Noble was not to attack that of witness, Quevedo Báez, who had not testified, but to confirm the verdict of his statement contained in the letter he sent to Herminio Díaz Navarro, which as we have said, could not be admitted as evidence.

Nevertheless, the errors committed by the inferior court in admitting the letter of Dr. Quevedo Báez to Herminio Díaz Navarro, the useless question on cross-examination, to which exception was taken and to which witness, Hildreth, replied, and the hearsay testimony of witness, Arturo Noble, in regard to the reasons Quevedo Báez had for securing the services of the plaintiff, do not appear to have prejudiced the material rights of the plaintiff, because he himself asserts in his testimony that Dr. Quevedo Báez had not engaged him in the name of the defendant company, nor of any employe of the latter, to perform surgical services on the injured man, Fontánez, and it has been sought to establish the same thing by the admission of the evidence excepted to, it being immaterial for the decision of this case, as will hereinafter be seen, whether the plaintiff took charge of the attendance on the injured man with or without the authority of Dr. Quevedo Báez.

If the errors committed are not material, they do not constitute a ground justifying the reversal of the judgment, as provided by section 142 of the Code of Civil Procedure. (See furthermore the decisions rendered in the following cases: *Auburn O. H. & P. Assn.* v. *Hill,* 113 Cal., 382; *Ward* v. *Ringo,* 2 Tex., 420; *Dangel* v. *Levy,* 1 Idaho, 737.)

In this connection it appears to us proper to reproduce what we have already said on the 19th instant, in deciding the case of *Martin Belber* v. *Enrique Calvo:*

"In cases tried by the court, the exclusion of evidence may often be an error; but it seldom happens that the admission of impertinent evidence constitutes a prejudicial error, because the court has, up to the last moment, the power to disregard impertinent testimony and to render judgment only on the strength of the material facts that have been proven. This course is generally followed by judges as the most expedient in trials without jury. And nothing to the contrary appearing on the record, the presumption should prevail that this course has been followed, and that, therefore, no error has been committed which renders necessary the reversal of the judgment."

In this case the lower court applied the same doctrine in its opinion, in stating that "the fact of introducing as evidence a statement alleged to have been made by Dr. Quevedo Báez after the institution of this action, is undoubtedly improper, but as the court has not read said statement, nor even heard it read, no prejudice whatsoever has been caused."

The fourth, fifth and sixth grounds of the appeal may be summarized in one, namely, that the court erred in its findings on the evidence presented at the trial, which error led it to render a decision contrary to the law; and to this end the appellant alleges that he has never maintained that the defendant company or any of its employes directly authorized the performance of the services rendered by the plaintiff, what he maintains being that said authority was impliedly given Dr. Quevedo Báez the moment the defendant company directed him to take charge of the attendance on the injured man Fontánez, it being then that it also conferred on him

the apparent authority to secure all the medicines necessary, nurses and attendance of all kinds, and to employ any expert assistance, surgical or medical, which the condition of the patient might require for his proper treatment.

The appellant cites, as provisions applicable hereto, sections 1612, 1614, 1616, 1621, 1629 and 1634 of the Civil Code, and seeks to fortify his opinion by decisions of the Supreme Court of Spain, of courts of the United States, and of this Supreme Court.

We understand that these provisions and this jurisprudence are not applicable to this case, because the contract which the company entered into with Dr. Quevedo Báez was not one of agency, but a hiring of services.

By the contract of agency, according to section 1611 of the Civil Code, a person binds himself to render some service or to do something for the account or at the request of another, and section 1619 provides that, when an agent acts in his own name, the principal shall have no action against the persons with whom the agent has contracted, nor the said persons against the principal, because in such case the agent is directly liable to the person with whom he has contracted as if the transaction were his own, excepting a case involving things belonging to the principal.

From these sections it is to be deduced that representation constitutes the essential basis of the contract of agency and its result is to convert actual absence into juridical presence, according to the words of the learned commentator, Sánchez Román. The essence of said contract consists in acting for the account of another, in performing juridical acts in the name of another whose personality the agent assumes. Such is not the case, according to section 1447, in a lease of services, in which contract one of the parties binds himself to render a service to the other for a specified price, which may be express or implied. A physician, in rendering the services of his profession, acts in his own name, without representing anyone else, and he does nothing but hire his services,

as the learned commentator, José María Manresa y Navarro, also distinctly affirms.

In support of this doctrine we may cite the jurisprudence of the Supreme Court of Spain, which in its decision of April 25, 1902, holds, in accordance with the doctrine theretofore established in previous decisions of March 11, 1887, October 29, 1900, and December 2, 1901, that the agent assumes the personality of the principal in the acts which he performs, and may, therefore, be sued in the name of the latter.

But even on the assumption that the contract entered into by the defendant company with Dr. Quevedo Báez were a contract of agency, by virtue of which the latter agreed to render professional services to the injured man, Fontánez, Quevedo Báez could not go beyond the limits of that agency, by entrusting to the plaintiff, it he did so, the surgical operation which was to be performed on Fontánez; and, having exceeded his power under this supposition, the defendant company did not become bound by his act, according to section 1629 of the Civil Code, and it cannot be alleged that, according to section 1617, the limits of the agency cannot be considered to have been exceeded, if it was executed in a manner more advantageous for the principal than that indicated by the latter, because the defendant company derived no advantage from the performance of the surgical operation on Fontánez by plaintiff, instead of Dr. Quevedo Báez. According to the testimony of the representative of the defendant company, the company pays the expenses of their employes when they are injured in connection with their work, not as an acknowledgment of liability, but simply as a matter of charity, and in this case this sentiment was satisfied by the professional attendance. of Quevedo Báez, who was not authorized to request the surgical services of the plaintiff in an express manner, to which the appellant agrees, nor in an implied, inductive, or indirect manner, because it can never be understood that the mere fact of entrusting the care of a

patient to a physician includes the power to call another physician to assist him.

It is useless to enter upon reasonings to show that there was no contract whatsoever of hire of professional services between the plaintiff and the defendant; this contract was entered into between Quevedo Báez and the Porto Rico American Tobacco Co., and no action can be derived therefrom in favor of the plaintiff against the defendant company.

For the foregoing reasons we are of the opinion that the judgment appealed from, rendered by the District Court of San Juan on September 14 of last year, should be affirmed.

*Affirmed.*

Justices MacLeary, Wolf and del Toro concurred.

Mr. Justice Figueras did not sit at the hearing of this case.